FILED

2004 Nov-16  PM 05:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>JASPER DIVISION</u>

| | |
|---|---|
| GENEVA DOVE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 01-PWG-2791-J |
| | ) |
| FAYETTE COUNTY BOARD OF EDUCATION | ) |
| AND BOBBY HATHCOCK, in his official and | ) |
| individual capacities; JOHNNY FULMER, in | ) |
| his official and individual capacities, and FRED | ) |
| COLBURN, in his official and individual | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |

<u>MEMORANDUM OF OPINION</u>

Geneva Dove filed this action against the Fayette County Board of Education alleging

discrimination based on her race in violation of Title VII of the Civil Rights Act of 1964 and 42

U.S.C. § 1981. She also sued Superintendent Bobby Hathcock and two members of the board,

Johnny Fulmer and Fred Colburn, individually and in their official capacities under 42 U.S.C. §

1981 and § 1983. The parties have consented to the jurisdiction of the magistrate judge pursuant

to 28 U.S.C. § 636(c) and L.R. 73.2. This matter is before the court for consideration of the

defendants' motion for summary judgment. (Doc. # 23)

Summary judgment is appropriate only if there are no genuine issues of material fact and the

movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In

making that assessment, the court must view the evidence in a light most favorable to the non-

moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima

facie entitlement to summary judgment by showing the absence of genuine issues and that he is due

to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following relevant facts are undisputed.  Dove was employed by the Fayette County Board of Education as secretary/bookkeeper at Fayette Elementary School (FES) for school years 1997-98, 1998-99, and 1999-2000.  Dove is African American.  Dove's immediate supervisor was FES Principal Joyce Harris,  an African American female.  Defendant Bobby Hathcock was Superintendent of the Fayette County School System from July 1995 through March 2002. Defendants Johnny Fulmer and Fred Colburn have been board members with the Board since 1994.

During Dove's employment, the six member Board consisted of Donald Wright, Rosalind Peoples, Nancy Shepard, and David Rutledge in addition to Fulmer and Colburn.

Under Alabama law, the decision to hire or terminate school system employees is made by the Board of Education acting upon the recommendation of the Superintendent. *Ala. Code* §§ 16-8-23 and 16-9-23.  A majority of the entire Board must vote in favor of a motion to accept the Superintendent's recommendation for the motion to pass. *Ala. Code,* § 16-8-4.  Non-certified school system employees (non-teachers) obtain non-probationary or tenured status in the fourth year of their employment.  The first three years are probationary.

As a matter of practice the Board generally terminates or "non-renews" the contracts of all probationary employees at the end of each school year.  The Board will then consider the "non-renewed" employees for rehire at the beginning of the next school year if the Superintendent recommends rehire.

Ms. Dove was hired at the secretary/bookkeeper at Fayette Elementary School on July 24, 1997 by unanimous vote of the Board after defendant Fulmer made the motion to hire her and Colburn seconded the motion.  The Board also voted unanimously to rehire Dove for the 1998-99 and 1999-2000 school years.

On January 18, 2000, the Board voted to close the Fayette Area Career Technical School (FACTS) at the end of the 1999-2000 school year.  Teena Simmons Galloway, a tenured white employee, was the bookkeeper at FACTS.  On March 14, 2000, the Board voted to transfer Galloway from FACTS to Berry High School, 18 miles from Fayette.  Galloway appealed her transfer pursuant to *Ala.Code* § § 36-26-104 through 107.  Galloway complaint that she did not want

to commute from Fayette to Berry.  She contended that she should be allowed to "bump" Dove, a non-tenured employee, from the job at Fayette Elementary School.

On April 18, 2000, consistent with general practice, the Board voted unanimously to non-renew all non-tenured employees included Dove.  At the same board meeting, the Board held a hearing on Galloway's appeal of the March 14, 2000 transfer decision.  Galloway presented a written request to transfer to Fayette Elementary as the bookkeeper.  After the Board again voted unanimously to transfer Galloway to Berry High School, Galloway appealed for a second time.

Not long after the April 18 meeting Betty Christian, the secretary at Fayette Elementary School, announced her intention to retire.  Dove's non-renewal and Christian's retirement left both Fayette Elementary School clerical positions vacant.  Hathcock recommended Galloway for the secretary/bookkeeper position and Dove for the secretary only position.  Hathcock made these recommendations because he believed Galloway was the better bookkeeper.  Hathcock had also received negative feedback from Rose Marie Carothers concerning Dove's performance.  Hathcock did not receive criticism of Galloway's performance.  Moreover, as noted, Galloway was a tenured employee.  Hathcock determined there was opposition on the Board to Dove continuing to serve as bookkeeper in part because Fayette Elementary School had been "in the red" financially.  Hathcock viewed his recommendation as a way to solve Galloway's dissatisfaction over her transfer to Berry and to alleviate concerns about Dove's performance as bookkeeper by recommending Galloway as the secretary/bookkeeper and Dove as secretary.

At the June 20, 2000 board meeting, the board voted to accept the retirement of Betty Christian and also the transfer of Teena Galloway to Fayette Elemental School as the secretary/bookkeeper.  The board voted three in favor and two against the recommendation to rehire

4

Dove as secretary at Fayette Elementary School.  Board members Fulmer and Colburn voted against the recommendation of Hathcock.  Alabama law requires that four members of the Board vote in favor of the recommendation before it could be adopted.  With only three votes in favor the motion to rehire Dove failed to pass.

Fulmer voted against Dove because he recognized Dove would become tenured rather than remain in a probationary status if hired for a fourth year.  The recommendation of Dove for the position of secretary rather than secretary/bookkeeper "raised a red flag" in Fulmer's mind which caused him to seek additional information from Rose Marie Carothers, Betty Christian,  Paul Shelton, and Randy Thomley.  Fulmer did not discuss Dove with either Harris or Hathcock. Carothers, as Custodian of Funds, reviewed monthly financial reports submitted by Dove.  She found errors in 75% of the reports Dove had submitted during Dove's tenure as bookkeeper. According to Carothers' affidavit, "The errors would require me or my staff to contact Geneva Dove to have the report corrected or physically go to Fayette Elementary School to have the errors corrected." (Carothers' affidavit, ¶ 8).  Carothers stated that on at least one occasion she discussed difficulties that Dove was having with her principal and the superintendent but otherwise "I contacted Geneva Dove directly to have the errors corrected.  I did not contact the principal at Fayette Elementary School or the Superintendent of Education." (Carothers' affidavit, ¶ ¶ 8 and 9).

 Based on Galloway's performance as bookkeeper at Fayette Area Career Technical School and Dove's performance as bookkeeper at Fayette Elementary School, Carothers told a board member in May or June of 2000 that she would prefer Galloway as the bookkeeper at the school. (Carothers' affidavit, ¶ 11).  Thomley was the interim principal at Fayette Elementary School while Harris was on medical leave in the Spring of 2000.  As such, he reviewed financial reports and deposits

prepared by Dove and, because of calculation errors, returned them to her. (Thomley affidavit, ¶ ¶ 2 and 5). When Fulmer asked Thomley how Dove performed her duties while he was interim principal, Thomley told Fulmer about the errors in the deposits and reports. (Thomley's affidavit, ¶ 6). Paul Shelton became the assistant principal/guidance counsel at Fayette Elementary School on February 15, 2000. He testified by affidavit "As the assistant principal at [Fayette Elementary School], I would often take the school deposit to the bank. As the school bookkeeper, Geneva Dove would prepare the deposit." (Shelton affidavit, ¶ 4). He further testified that the deposits prepared by Dove frequently had computational errors and that he reported these errors to Fulmer when Fulmer asked him about Dove's performance as school bookkeeper.   Fulmer testified that Betty Christian, the retiring secretary/receptionist, told him that she did not feel that Dove would have the ability to do the secretary job and that "she mentioned things like putting together a simple letter, skills that would be necessary to perform that job." (Fulmer deposition, pp. 75-78). Colburn testified that he asked Betty Christian if she felt that Dove would be a good choice for the secretary's job and she shook her head from side to side indicating she did not think so. (Colburn deposition, pp. 36-37.)[1]

---

[1]     Plaintiff submitted her own affidavit stating:

> Following the depositions of Johnny Fulmer and Fred Colburn, I spoke with Betty
> Christian concerning representations they made concerning conversations with Mrs.
> Christian. In my conversation, she denied having told Mr. Fulmer or Mr. Colburn
> anything concerning her opinion about my ability to do secretarial work.   She
> admitted that Mr. Fulmer had come to her home to speak with her about me but
> vehemently denied having given any opinion regarding my work related abilities.

Plaintiff's affidavit.

Defendant's filed a motion to strike (doc. #33) asserting that the Dove's self-serving testimony is rank hearsay. The motion to strike is GRANTED. In their August 2002 responses to interrogatories, both Fulmer and Colburn stated that they spoke to Christian regarding plaintiff's employment status. The deposition testimony of Fulmer and Colburn was taken on September 27, 2002. Plaintiff apparently made no effort to depose Christian or to obtain an affidavit from her by the September discovery deadline nor did she seek an extension of the

Based on the information from Carothers, Thomley, Shelton, and Christian, Fulmer did not support rehiring Dove for a fourth year. Fulmer concluded that if Dove were rehired she would have become tenured into a position she had demonstrated was beyond her skills. (Fulmer depo., pp. 95-97). Colburn relied on the information gathered by Fulmer and his own questioning of Christian in deciding how to vote. (Colburn depo, pp. 19-20, 36-37).

Fulmer had on other occasions sought additional information before deciding how to vote on the superintendent's recommendation with regard to other employees, both African American and white. (Fulmer depo, pp. 102-27). Fulmer voted against the superintendent's recommendation to rehire a white male because he had received information that the coach had been sexually involved with some of the teenaged girls he was coaching. (Fulmer depo., pp. 105-06). Fulmer investigated an African American recommended for rehire by the superintendent because of complaints receive that the teacher was too strict with students. Upon talking with teachers and personally observing the teacher, however, Fulmer voted in favor of the teacher's employment. Fulmer voted against the rehire of a white female teacher after investigating complaints by parents and teachers concerning her inappropriate manner of dress. (Fulmer depo, pp. 115-17). Fulmer also voted against the rehire of a white female teacher who had dated male students. (Fulmer Depo, pp. 118-20).

After the Board failed to rehire Dove, Hathcock recruited Phyllis Stowe, an African American woman, to fill the secretarial position at Fayette Elementary School.[2]

_____

discovery deadline.  Instead, she submitted her own alternative statements to Christian.

[2]        Dove points out that two years later Fulmer voted not to rehire Stowe after an investigation.  Dove fails, however, to acknowledge that in a second vote Fulmer voted to rehire Stowe.  (Fulmer Depo. , pp.47-53).

Dove alleges that the defendants' actions in failing to rehire her was due to her race and violated Title VII, 42 U.S.C. § 1981 and § 1983.  Title VII,  § 1981 and § 1983 race discrimination claims supported by circumstantial evidence are governed by the same framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); therefore, the analysis which follows is equally applicable to the Title VII, § 1981 and § 1983 claims.  *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Harris v. Shelby Co. Bd. of Ed.*, 99 F.3d 1078, 1082-83 (11th Cir. 1996).

> Under this framework, the plaintiff must establish a *prima facie* case of discrimination.  The establishment of a *prima facie* case creates a presumption of discrimination.   The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption.  If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual.

*Standard*, 161 F.3d at 1331.

For purposes of the summary judgment motion, defendants have conceded that Dove has established a *prima facie* case of discrimination.  (Defendants' brief in support of motion for summary judgment, p.13, n.6).  Defendants have offered legitimate, non-discriminatory reasons for the challenged actions.

Hathcock recommended Dove as secretary because (1) he was aware of opposition on the Board to Dove continuing as secretary/bookkeeper, (2) he believed Galloway was the better bookkeeper and (3) he felt that he could alleviate concern over Dove's performance as bookkeeper and also retain Dove by recommended her for the secretary position only.  Fulmer and Colburn were

concerned about making Dove a tenured employee in the position of secretary only when she had

not previously served in that position while on probation.

With the presentation of a legitimate, nondiscriminatory reason for Hathcock's

recommendation that Ms. Dove be appointed only to the secretary position and for the decision of

Fulmer and Colburn to oppose her rehire, defendants have rebutted the presumption of

discriminatory intent.  Ms. Dove bears the burden of  producing sufficient evidence from which a

reasonable fact finder could conclude that the proffered reasons were not the actual motivation for

their decisions.  Dove may demonstrate that the proffered reasons were pretextual "(1) by showing

that the legitimate non-discriminatory reasons should not be believed; or (2) by showing that, in light

of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered

reasons. *Standard*, 161 F.3d at 1332.

Dove argues that the independent investigation by Fulmer was in some way improper.

However, Alabama law does not require that a member of a county board of education "rubber

stamp" the recommendations of the superintendent with respect to appointment or removal of

personnel.   Further, northing in the statute suggests that a board member may not conduct

independent investigation before deciding whether to follow the recommendation of the

superintendent.

Dove complains that "Fulmer's investigation of Dove's performance as secretary/bookkeeper

resulted only in a rehashing of concerns raised during the early stages of her employment – a period

when she had not been adequately trained in using the district's new accounting system."

(Plaintiff's brief, p. 9).  There is, however, no evidence that Fulmer's investigation was a mere

rehashing of problems occurring during the early stages of Ms. Dove's employment.  Thomley and

Shelton each had contact with Dove in her bookkeeper capacity in 2000 – the year of her termination.  Carothers had contact with Dove throughout her employment and concluded that Dove had never grasped the accounting system.  While Principal Harris testified that Dove's reports were generally error free Dove has not contradicted Carothers' testimony that Carothers contacted Dove directly to correct errors.  Principal Harris based her conclusion on the fact that she signed the reports and they were not returned to her.  That evidence, however, does not relate to the evidence that Carothers corrected the errors through Dove.

Dove also complains that "Fulmer solicited information only from white persons who were only marginally involved in Dove's work and in no position to evaluate her sustained performance while failing to inquire about her performance from her then immediate supervisor with whom she interacted on a regular basis and who is black."  (Plaintiff's brief,  p. 9).  Before he began his investigation, Fulmer knew that Principal Harris had a favorable evaluation of Dove because she had recommended Dove's rehire.  It is true of course that Carothers, Thomley, Shelton, and Christian are white.  These individuals were not, however, "only marginally involved" in Dove's work as Dove's brief suggests.  Carothers was Custodian of the Funds the entire time that Dove was bookkeeper and, as such,  was in a superior position to Principal Harris to evaluate Dove's bookkeeping abilities.  Further, Thomley was interim principal for two months in 2000 during Principal Harris's leave; therefore, his involvement cannot be characterized as not marginal.  Thomley stated that he was required to return financial reports and deposits to Dove to be reworked because of her calculation errors.  Although Harris stated that Thomley did not report to her that there were problems associated with Ms. Dove's performance of her duties, Dove does not dispute that Thomley returned reports and deposits to her due to calculation errors.  Shelton stated that he

often took the school deposit to the bank in 2000.  His knowledge that the deposits prepared by Dove frequently had computational errors was relevant.

Dove complains that Colburn and Fulmer based their decision not to hire Dove on Christian's alleged representation that Dove would not be a good choice.[3]  Fulmer and Colburn were obviously concerned about placing Dove in a tenured position with the school system when they had doubts about her proficiency in the bookkeeper position that she had held for three years.  The fact that Dove would be tenured upon rehire was certainly a reasonable consideration on the part of Fulmer and Colburn.

Dove stated that Hathcock failed to clearly and specifically articulate a legitimate nondiscriminatory reason for his failure to recommend Dove for rehire as secretary/bookkeeper. Hathcock testified that he believed Galloway to be the better bookkeeper based on the fact that she was tenured.  Hathcock also knew that some members of the board opposed Dove being given tenure in the bookkeeper position and he recommended Dove in the secretary only position in an attempt to help her.  Both Hathcock and Galloway are white; however, this alone is insufficient to establish that the reasons given by Hathcock were pretextual.  Moreover, Carothers, the custodian of funds, stated that, based on the bookkeeping performances of both Galloway and Dove, she preferred Galloway as bookkeeper at Fayette Elementary School over Dove.[4]

---

[3]     See footnote 1, *supra*.

[4]     Dove does not argue that she was better qualified than Galloway.  Further, had she so argued, it would be difficult for Dove to adduce evidence that the disparity in qualifications was "so apparent as virtually to jump off the page and slap you in the face."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1090 (11th Cir. 2004), quoting *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253-54 (11th Cir. 2000); *cert. denied*, 532 U.S. 958 (2001).

"The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, [or, as here, failure to rehire], but whether the employer really was motivated by those reasons."  Standard, 161  F.3d at 1333.

In order to directly attack defendants' reasons as pretextual, Dove must demonstrate "such weaknesses, implausibilities, inconsistences, incoherencies [sic], or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find [all of those reasons] unworthy of credence."  *Combs v. Plantation Patterns*, 106 F.3d 1527, 1538 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998).  Dove has failed to produce such evidence and has failed to prove that the legitimate, nondiscriminatory reasons advanced by defendants are pretext for racial discrimination.  Because there is no evidence that the actions of the Board, Hathcock, Fulmer or Colburn were motivated by racially discriminatory reasons, all defendants are entitled to summary judgment on the Title VII, § 1981 and § 1983 claims.

Based on the foregoing, defendants' motion for summary judgment is due to be granted.  A separate Judgment consistent with this Memorandum of Opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 16th day of November, 2004.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>JASPER DIVISION</u>

| | |
|---|---|
| GENEVA DOVE, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 01-PWG-2791-J |
| | ) |
| FAYETTE COUNTY BOARD OF EDUCATION | ) |
| AND BOBBY HATHCOCK, in his official and | ) |
| individual capacities; JOHNNY FULMER, in | ) |
| his official and individual capacities, and FRED | ) |
| COLBURN, in his official and individual | ) |
| capacities, | ) |
| | ) |
|        Defendants. | ) |

JUDGMENT

In conformity with the Memorandum Opinion filed contemporaneously herewith, the undersigned concludes that no material issues of fact remain.  Defendants are entitled to summary judgment as to all of plaintiff's claims.  Defendants' motion for summary judgment is GRANTED. It is hereby ORDERED, ADJUDGED and DECREED that judgment is entered in favor of defendants as to all of plaintiff's claims.

As to the foregoing it is SO ORDERED this the 16th day of November, 2004.

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE